**NATIONAL DISTILLERS & CHEMICAL CORP., Jawad H. Murib, and Charles A. Bonecutter, Plaintiffs,**

v.

**David L. LADD, Commissioner of Patents, Defendant.**

**Civ. A. No. 2092-63.**

United States District Court
District of Columbia.

Feb. 15, 1965.

A. Yates Dowell, A. Yates Dowell, Jr., Washington, D. C., E. Janet Berry, New York City, for plaintiffs.

Clarence W. Moore, Sol., Washington, D. C., for defendant.

JACKSON, District Judge.

This is an action brought pursuant to U.S.C. § 145 in which the plaintiff, National Distillers and Chemical Corporation, as assignee, and the plaintiffs, Jawad H. Murib and Charles A. Bonecutter, as applicants, of application for patent Serial No. 748,156, filed July 14, 1958, entitled "Preparation Of Boron Compounds", seek by their complaint a judgment from the Court authorizing the defendant, Commissioner of Patents, to grant plaintiffs a patent containing claims 2, 3, 4, 7 and 8 of the aforementioned application.

The invention relates to a catalytic method for the preparation of boron hydrides, specially haloboron-hydrides and diborane, by the vapor phase reduction of boron trihalides (such as boron trichloride) with hydrogen in the presence of a Group Ib metal (such as copper or silver) which serves as a catalyst. The reaction is carried out at temperatures of from 250° to about 950°C for a period of time which ranges from 0.01 to 2.5 seconds. Hydrogen may be used in large excess, such as 1 to 60 moles per mole of boron trihalide, and the amount of Group Ib metal may vary widely from relatively small catalytic amounts based on the weight of the boron trihalide reactant to large amounts, as when a bed of such metal is used. The reduction reaction results in a product mixture consisting mainly of haloboronhydrides, diborane, boron halide, hydrogen and hydrogen halide. A critical feature of the reaction is that no substantial formation of the corresponding halide of the Group Ib metal occurs.

Claim 7 is the principal claim at issue, and reads as follows:

"7. A catalytic process for preparation of boron hydrides by direct reaction of a boron trihalide with hydrogen which comprises passing a mixture of a boron trihalide and hydrogen into contact with a catalytic amount of a Group Ib metal at from about 250 to about 950°C for from about 0.01 to about 2.5 seconds to produce boron hydrides by direct reaction of the hydrogen and boron trihalide without substantial formation of the corresponding halide of said Group Ib metal, and continuing passage of such a mixture of boron trihalide and hydrogen into contact with said catalytic amount of Group Ib metal at said conditions of temperature and contact time until the amount of boron hydrides produced greatly exceeds the amount of boron hydride theoretically producible if said catalytic amount of Group Ib metal reacted with boron trihalide to produce the corresponding halide of said Group Ib metal in presence of hydrogen whereby there is produced a reaction mixture comprising essentially haloboronhydrides, diborane, boron halide, hydrogen, and hydrogen halide and containing no Group Ib metal halide."

This claim was rejected by the Patent Office on the ground that the differences between the subject matter it contained and that of the prior art would have been obvious at the time the invention was made to a person having ordinary skill in the art to which the subject matter pertains. 35 U.S.C. § 103. The prior art relied upon by the Patent Office at trial was a United States patent to Winternitz, No. 2,875,028 (1959); an article by Schlessinger and Burg in the Journal of the American Chemical Society, Vol. 53, pp. 4321–4332 (1931); and an article by Weintraub in Industrial and Engineering and Chemistry, Vol. 3, pp. 299–301 (1911).

The Winternitz patent discloses a process for the vapor phase preparation of boron hydrides. A mixture of boron trichloride and hydrogen is passed through a reaction chamber where it reacts with finely divided aluminum (or copper) at a temperature between 350° and 700°C for from a few thousandths of a second to several seconds. Aluminum chloride is formed during the reaction, and is collected in a container as the mixture subsequently passes through another chamber.

The Schlessinger and Burg publication describes passing a mixture of boron trichloride across an arc in order primarily to produce elementary boron at a temperature of 2000° centigrade. The process was described by the testimony of its co-author Dr. Burg as "essentially a cold process", or one occurring "at nearly room temperature". Instead of an electric arc, Schlessinger and Burg apparently employed a "glow discharge". Dr. Burg further characterized the temperature of operation as "far less than what I would call a good red heat".

The Weintraub article discloses a method for preparing elemental boron based on the decomposition of boron chloride by hydrogen "at good red heat". The heat is provided by "an arc discharge taking place between two * * copper electrodes" which occurs "in an atmosphere of boron chloride and hydrogen".

At trial the claims were asserted to be unpatentable on two separate grounds. The first was that they were obvious in view of Winternitz, and the second was that they were obvious in view of Schlessinger et al. combined with Weintraub.

With respect to Winternitz, the Patent Office seems at first to admit that a stoichiometric reaction is involved. Realizing that plaintiffs' claims, however, seem to contemplate a catalytic reaction, the Patent Office relies upon the occasional use by Winternitz of the word "promoter" to designate the copper or aluminum. From the usual signification of that word, the Patent Office argues

that the metal really is employed as a catalyst, since "promoters" are customarily thought of as performing a catalytic function. Additionally, the Patent Office contends that since he uses an *excess* of metal, Winternitz would have remaining a portion of the metal "unconsumed and reuseable", thus likening the metal to a catalyst, which normally is not consumed in the reaction it initiates.

With respect to the second ground of rejection, the Patent Office takes the position that Schlessinger, et al. disclose an electric arc process which uses the apparatus of Weintraub; that Weintraub states that he uses a "good red heat"; that this heat is within the temperature range of applicant's claims; and that Weintraub's use of copper electrodes meets the requirements for the presence in plaintiffs' process of a Group Ib metal.

In response to the rejection upon Winternitz, the plaintiffs introduced evidence by which they sought to demonstrate that the Winternitz process was not in fact "catalytic", and that Winternitz indeed produced metal halides as a necessary part of his reaction. The plaintiffs also sought to show that the word "promoter" was used erroneously by Winternitz in his specification.

In response to the second ground of rejection, plaintiffs adduced testimony by Dr. Burg, co-author of the Schlessinger-Burg publication, by which plaintiffs sought to establish that the principal purpose of using an electric discharge was not to provide heat, but electrons, and that the reaction was essentially "electric" in the sense that the energy of the electrons passing through the vapor caused the reaction to occur. Dr. Burg testified further that it would not have been reasonable to assume that the Schlessinger-Burg publication indicated operation at a "red heat". Finally, plaintiffs evidence sought to demonstrate that the copper electrodes used to produce the arc did not perform a catalytic function.

With regard to the rejection based upon Winternitz, the Court must find as a fact that the reaction of Winternitz is not really catalytic. From the disclosure as a whole it is indisputable that the finely divided aluminum participates *directly* in the reaction and thereby forms aluminum chloride. This is the exact antithesis of the language in the plaintiffs' claim, which specifies that halides of the Group Ib metals are not formed to any "substantial extent" during the reaction.

The word "promoter", as the Patent Office pointed out, customarily signifies an agent which performs a catalytic function. The Court finds, however, that the word as used by Winternitz only designates an agent which serves to "promote" the reaction. This is exactly what the aluminum does. To accomplish this "promotion", however, the aluminum must actively participate in the reaction by forming the very metal halide that plaintiffs describe as *not* being formed by their process in substantial amounts.

The Court must also agree with the plaintiffs' view as to the second ground of rejection. The Court finds that no basis whatever exists for thinking that the copper electrodes serve as catalysts in the electrical process. Similarly, it is clear from the testimony at trial that the electrical process is quite different in its theory and practice from a method employing heat. This view of the matter was inescapable after considering the testimony of Dr. Burg, who revealed that the electrical process was capable of producing only one gram of the desired product per day.

After reviewing the record and weighing the testimony, and after according the findings of the Patent Office every favorable presumption, the Court is compelled to hold that the rejection of the claims is wholly inconsistent with the evidence.

Accordingly, the Court will find for the plaintiffs and against the defendant, and will authorize the Commissioner of

Patents to issue Letters Patent of the United States containing claims 2, 3, 4, 7 and 8 of plaintiffs' application.

The above Opinion contains Findings of Fact and Conclusions of Law.